## MERKLE *v.* MERKLE

[No. 156, October Term, 1952.]

*Decided June 12, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Carl W. Bacharach,* with whom were *Stahl and Bacharach,* on the brief, for appellant.

*William W. Cahill, Jr.* and *Robert L. Weinberg,* with whom were *Weinberg and Green* and *Leroy W. Preston,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is by a wife from a decree granting a divorce *a mensa* to a husband, on a bill charging adultery and desertion. The Chancellor found the evidence of adultery insufficient but found desertion within eighteen months before the filing of the bill. There was no cross-appeal.

The parties were married in January, 1951. They were each forty-seven years of age and both had been previously married to other persons. The wife had some property of her own, including $5,000, the proceeds of insurance upon the life of her deceased husband. With this money, and other funds supplied by Mr. Merkel's mother, they built and operated a tavern and restaurant on the Ritchie Highway, where they resided. There was abundant evidence that the wife was, or became, a problem drinker, but there was no evidence of serious discord until October, 1951. She did not deny the drinking but claimed that her husband did not object and drank with her. However, there was testimony that she was often in such condition that she would stagger about the place and her husband gave orders to the employees not to serve her liquor. She frequently went out at night and would appear at the homes of other witnesses, or come home, long after midnight in an intoxicated condition. The husband began to suspect that she was in the company of other men.

On October 27, 1951 the husband charged her with undue intimacy with the bartender, Bellman. A quarrel

ensued in which she defiantly admitted that she had had sexual relations with Bellman. She made the same statement to Mrs. Bellman over the telephone, she says because Mr. Merkle forced her to. Bellman left or was discharged as a result of this incident. A few days later, when she came home in a taxi-cab, she told her husband she had had sexual relations with the driver. According to the husband, the driver said he "never started it"; after the driver had gone, she pointed out to her husband the place where the cab driver had parked while they had relations. There was testimony from several witnesses that she made admissions of misconduct to them or in their presence.

On the stand the appellant denied that she had ever had improper relations with anyone. She denied that she had admitted her guilt to her husband or anyone else. The Chancellor stated that "even though she did make the admissions" he did not believe that improper relations had occurred, and in any event corroboration was lacking. On the stand, Bellman absolutely denied the charge against him, and Mrs. Bellman testified she never believed it, in spite of Mrs. Merkle's statement to her. The appellee testified that he did not have marital relations with the appellant after this incident, but they continued to occupy the same bed and there was other evidence of condonation, if he ever believed her stories. On December 10, 1951 she suddenly left the house and never returned. She afterwards sent for her clothes. There was no evidence of a quarrel on that occasion. In fact, there was testimony that he offered to accompany her and did not want her to go. She had previously told several witnesses that she was going to leave, and intended to consult a lawyer so that she could get the business "for herself without Mr. Merkle". One of these conversations was as early as June, 1951, before any accusations had been made.

The attempted justification for her departure is that the husband's accusations of infidelity, which she claimed were false and intolerable, had forced her to do so. She

relies upon the cases of *Poole v. Poole,* 176 Md. 696, 6 A. 2d 243, (Unrep.), and *Silverberg v. Silverberg,* 148 Md. 682, 130 A. 325. We think these cases are clearly distinguishable on the facts. Here the charges were not unfounded, in the light of her pattern of behavior and the readiness with which she admitted, indeed flaunted, her misconduct to her husband and others. This is not the case of a sinister scheme on the husband's part to degrade and humiliate a sensitive and blameless woman. She seeks to bolster her case by stating that her husband bullied and struck her. He admitted striking her at the time of the Bellman incident, and on one other occasion when she cursed him in his mother's presence. But there was no evidence that these assaults were brutal or calculated to put her in fear, and it cannot be said that they were unprovoked. She left on her own initiative. As the Chancellor said: "The testimony of Mrs. Merkle's own witnesses shows that the husband did not want her to leave, but that she had made up her mind to leave and she did leave." The testimony supports the finding that her departure was not justified by her husband's conduct. Under the familiar rule that the findings of the Chancellor should not be disturbed in the absence of clear error, the decree must be affirmed.

*Decree affirmed, with costs to be paid by the appellee.*